NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PREFERRED REAL ESTATE INVESTMENTS, INC., et al., : : : Plaintiffs, : : v. : : EDGEWOOD PROPERTIES INC., et al., : : Defendants. : : | Civil No. 06-4266 (AET) **MEMORANDUM AND ORDER** |

THOMPSON, U.S.D.J.

I. Introduction

This matter comes before the Court on Defendants Ford Motor Company and Ford Motor Land Development Corporation's Motion to Dismiss. The Court has decided this motion based upon the submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons stated below, Defendants' motion to dismiss is granted in part and denied in part.

II. Background

This complex dispute stands at the intersection of the laws of property, contract and tort, and stems from the division of one parcel of land. On June 7, 2004, the Township of Hamilton Planning Board (the "Board") allowed American Standard Inc. ("Am. Stand.") to subdivide its parcel of land into two lots, provided that Am. Stand. create an easement enabling free access for both new parcels. Am. Stand. complied, subdivided its parcel into Lot 10.01 and Lot 10.02, and created an easement agreement (the "Easement Agreement") to bind future possessors of the

1

Lots. Am. Stand. then sold Lot 10.02 to Plaintiffs Preferred Real Estate Investments, Inc. ("Preferred") and 240 Princeton Avenue Associates, L.P. ("Associates") (together, "Plaintiffs") and Lot 10.01 to Edgewood Properties Inc. ("Edgewood").

Pursuant to the Easement Agreement, Edgewood agreed to install a portion of a roadway, common to Lot 10.01 and 10.02, known as the American Metro roadway (the "Roadway"). Edgewood obtained crushed concrete material from Defendant Ford Motor Company ("Ford Motor") and Defendant Ford Motor Land Development Corporation ("Ford Land") (together, the "Ford Defendants"). After the concrete was used to create the foundation of the Roadway, Plaintiffs soon discovered that the concrete contained elevated levels of Poly-Chlorinated Biphenyl ("PCB"); a toxic substance. Edgewood informed the New Jersey Department of Environmental Protection ("NJDEP") and the NJDEP issued several administrative orders ("AOs") directing the Ford Defendants to remove the contamination.

The Ford Defendants then entered into a license agreement with Plaintiffs to enter the site, fulfill certain obligations to Plaintiffs and comply with the AO directives. Plaintiffs bring the current action alleging the Ford Defendants have yet to fully comply the license agreement, and that Plaintiffs have been significantly damaged from the Ford Defendants' contamination, and failure to remediate the area.

Plaintiffs bring several claims against Ford Defendants[1], including Count V, seeking a declaratory judgment that Ford Defendants are jointly and severally liable to Plaintiffs under the New Jersey Spill Act, N.J. Stat .Ann. § 58:10-23. 11f(a)(2), for Plaintiffs' cleanup costs. Count VI alleges the Ford Defendants are liable for negligence in "causing PCB-contaminated concrete

---

[1] Counts I through IV are raised against other defendants and not at issue in this motion.

to be transported and delivered" to the Am. Stand. site. Count VII seeks specific performance of the license agreement, or, in the alternative, Count VIII asserts breach of contract claims against the Ford Defendants for failure to fulfill the terms of the license agreement. Count IX alleges the Ford Defendants are strictly liable for engaging in the abnormally dangerous activity of creating contaminated concrete. Count X alleges the Ford Defendants are liable for nuisance.[2] Lastly, Count XI alleges the Ford Defendants committed trespass by causing contaminated concrete to enter the Roadway without Plaintiffs' consent. Ford Defendants bring this Motion to Dismiss all counts against them. A discussion of each count follows.

III. Discussion

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), the Court may grant a motion to dismiss for failure to state a claim upon which relief can be granted if, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." Oatway v. Am. Int'l Group, Inc., 325 F.3d 184, 187 (3d Cir. 2003). Further, "[t]he issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims." Id. In setting forth a valid claim, a plaintiff is required only to plead a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

---

[2] In their Opposition, Plaintiffs withdrew Count X and, therefore, this count is dismissed.

B. Count V: the New Jersey Spill Act

To adequately plead a claim under the Spill Act, a plaintiff must allege that (1) a defendant was "in any way responsible" for the discharge of a hazardous substance; and (2) that the plaintiff engaged in clean-up or removal of the hazardous substance.  N.J. Stat. Ann. § 58:10-23.11f(a)(2); see, e.g., Kemp Indus. v. Safety Light Corp., Civ. A. No. 92-95, 1994 WL 532130, at *32 (D.N.J. Jan. 25, 1994) (stating "a cause of action under section 23.11f(a)(2) can accrue only when a plaintiff has engaged in cleanup and removal of a discharge of a hazardous substance") (citing Hatco Corp. v. W.R. Grace & Co.-Conn., 836 F. Supp. 1049, 1093 (D.N.J. 1993) ( "To qualify as a contribution plaintiff [under the Spill Act], [a plaintiff] must demonstrate that it has cleaned up and removed a discharge of a hazardous substance.")).

The Ford Defendants assert that Plaintiffs failed to allege they engaged in any act of clean-up or removal and, therefore, even taking all Plaintiffs allegations as true, they fail to meet the elements of a Spill Act claim.  Plaintiffs never specifically allege that they engaged in acts of clean-up or removal, but did they allege that they "incurred cleanup and removal costs."  (Compl. ¶ 73).  Though it may be metaphysically possible for Plaintiffs to have incurred clean-up or removal costs without actually engaging in clean-up and removal, the reasonable inference from the allegations is that they engaged in such acts.  Therefore, at the motion to dismiss stage, Plaintiffs have made a sufficient allegation under the Spill Act, and the claim will stand.

B. Count VI: Negligence

It is hornbook law that to properly plead negligence, a plaintiff must allege: (1) duty of care, (2) breach of duty, (3) proximate cause, and (4) actual damages.  See, e.g., Stanley Co. of Am. v. Hercules Powder Co., 108 A.2d 616 (N.J. 1954); see also Prosser and Keeton on the Law

4

of Torts, § 30, at 164-65 (5th ed.1984). Here, the Ford Defendants argue that Plaintiffs failed to allege that the Ford Defendants owed or breached a duty of care to Plaintiffs. The Ford Defendants assert they owed no duty to Plaintiffs, as they neither knew the contaminated concrete was used and/or disposed of at the Roadway, nor did they direct such use or disposal. The Ford Defendants argue that Plaintiffs' attempt to pin a negligence claim upon them merely for generating waste and this amounts to an insufficient pleading as a matter of law.

The Ford Defendants interpret Plaintiffs' allegations and the legal concept of duty too narrowly. Plaintiffs specifically allege that the Ford Defendants knew or should have known that the concrete they gave to Edgewood "contained PCBs in levels that prohibited [its] use as fill or in roadbeds." (Compl. ¶ 78.) Plaintiffs further allege that the Ford Defendants, in spite of their knowledge, "breached a duty of care owed to Plaintiffs in that they negligently and carelessly failed to exercise due care with respect to the generation, storage, treatment, disposal and/or use of PCB-contaminated concrete" originating at their plant. (Compl. ¶ 78.) Here, Plaintiffs have alleged more than simply that the Ford Defendants generated waste. Rather, they alleged that the Ford Defendants knew their concrete was contaminated and unreasonably gave it to Edgewood and other defendants, causing it "to be used as fill . . . in road beds" on Plaintiffs' property. (Compl. ¶ 76.)

The Ford Defendants' argument that they did not know the contaminated concrete would wind-up specifically on Plaintiffs' property is of no moment. A legal duty arises when it is foreseeable that a defendant's actions could harm a class of individuals, not necessarily only a specific individual. Olivio v. Owens Ill., Inc., 895 A.2d 1143, 1148, 189 N.J. 394, 404 (2006) (stating "whether a duty of care can be owed to one who is injured from a dangerous condition on

of Torts, § 30, at 164-65 (5th ed.1984). Here, the Ford Defendants argue that Plaintiffs failed to allege that the Ford Defendants owed or breached a duty of care to Plaintiffs. The Ford Defendants assert they owed no duty to Plaintiffs, as they neither knew the contaminated concrete was used and/or disposed of at the Roadway, nor did they direct such use or disposal. The Ford Defendants argue that Plaintiffs' attempt to pin a negligence claim upon them merely for generating waste and this amounts to an insufficient pleading as a matter of law.

The Ford Defendants interpret Plaintiffs' allegations and the legal concept of duty too narrowly. Plaintiffs specifically allege that the Ford Defendants knew or should have known that the concrete they gave to Edgewood "contained PCBs in levels that prohibited [its] use as fill or in roadbeds." (Compl. ¶ 78.) Plaintiffs further allege that the Ford Defendants, in spite of their knowledge, "breached a duty of care owed to Plaintiffs in that they negligently and carelessly failed to exercise due care with respect to the generation, storage, treatment, disposal and/or use of PCB-contaminated concrete" originating at their plant. (Compl. ¶ 78.) Here, Plaintiffs have alleged more than simply that the Ford Defendants generated waste. Rather, they alleged that the Ford Defendants knew their concrete was contaminated and unreasonably gave it to Edgewood and other defendants, causing it "to be used as fill . . . in road beds" on Plaintiffs' property. (Compl. ¶ 76.)

The Ford Defendants' argument that they did not know the contaminated concrete would wind-up specifically on Plaintiffs' property is of no moment. A legal duty arises when it is foreseeable that a defendant's actions could harm a class of individuals, not necessarily only a specific individual. Olivio v. Owens Ill., Inc., 895 A.2d 1143, 1148, 189 N.J. 394, 404 (2006) (stating "whether a duty of care can be owed to one who is injured from a dangerous condition on

the premises, to which the victim is exposed off-premises, devolves to a question of foreseeability of the risk of harm to that individual or identifiable class of individuals") (citations omitted).  Under the facts alleged, which must be taken as true at the motion to dismiss stage, Plaintiffs were foreseeable victims, and "[i]t requires no leap of imagination" to surmise that the Ford Defendants' concrete given to Edgewood could be used to contaminate property other than Edgewood's, such as a co-owner or those contracting with Edgewood: parties like Plaintiffs.  See Olivio, 895 A.2d at 1148 (holding plaintiff was a foreseeable class of victim owed a duty of care by defendant, where plaintiffs were harmed by the spread of off-site contamination).  Further, as Plaintiffs allege, the Ford Defendants breached their duty of care owed to Plaintiffs, by giving Edgewood the concrete, without informing them of the contamination.  (Compl. ¶ 78.)  Thus, Plaintiffs have sufficiently alleged all the elements of the negligence claim and it therefore survives.

### C. Counts VII and VIII: Specific Performance and Breach of Contract

The Ford Defendants raise several arguments as to why Plaintiffs' breach of contract claims should be dismissed.  As an initial matter, the Ford Defendants correctly note that Plaintiffs alleged that only Ford Land was a party to the license agreement.  Therefore, the contract claims raised against Ford Motor shall be dismissed, and the remainder of this section will only address the claim as brought against Ford Land.  Next, Ford Land argues that the contract claims should be dismissed because the license agreement merely parrots the obligations it owes under the NJDEP's AO and Plaintiffs have no private right of action to sue under the AO.  See, e.g., Superior Air Prods. Co. v. NL Indus. Inc., 522 A.2d 1025, 1033 (N.J. Super. Ct. App. Div. 1987).

Plaintiffs counter that the license agreement they executed with Ford Land does not merely incorporate the obligations under the AO, but contains significant additional obligations Ford Land owes exclusively to Plaintiffs. Some of the obligations alleged include ridding Plaintiffs' property of debris caused by Ford Land's cleanup, removing the contamination "with the least possible inconvenience to Plaintiffs," and providing sampling data to Plaintiffs. These allegations distinguish the pre-existing legal duties Ford Land owes the NJDEP under the AO from the contract duties owed to Plaintiff under the License Agreement and are sufficient to sustain a claim for breach of contract at the motion to dismiss stage. See Restatement (Second) of Contracts § 73 (1981) ("Performance of a legal duty owed to a promisor which is neither doubtful nor the subject of honest dispute is not consideration; but a similar performance is consideration if it differs from what was required by the duty in a way which reflects more than a pretense of bargain.").

Ford Land further argues that specific performance is inappropriate because "Plaintiffs' Complaint clearly demonstrates that their alleged damages, if proven, are able to be arrived at with a substantial degree of certainty . . ." (Defs.' Mot. to Dismiss at 14). Although specific performance is an appropriate remedy only if damages are impracticable or inadequate, Plaintiffs may plead alternative theories requesting damages and specific performance until discovery may better elucidate which remedy, if any, is appropriate. See Fed. R. Civ. P. 8(a); Tara Enters., Inc. v. Daribar Mgmt. Corp., 369 N.J. Super. 45, 50 (N.J. Super. Ct. 2004) ("The complaint sought specific performance of the two joint venture agreements, and, alternatively, damages.") (citations omitted). Accordingly, Plaintiffs' claims of specific performance and breach of contract survive.

D. Count IX: Strict Liability

To properly assert a claim for strict liability a plaintiff must allege two elements: "(1) that the defendant's disposal of waste constituted an 'abnormally dangerous activity,' and (2) that such activity has harmed the plaintiff." Interfaith Cmty. Org. v. Honeywell Int'l, Inc.. 263 F. Supp. 2d 796, 850 (D.N.J. 2003) (citations omitted).  Defendants assert that Plaintiffs have insufficiently plead a strict liability claim because they failed to allege the Ford Defendants "deposited [the contaminated concrete] anywhere at the [Roadway], or even had knowledge of such activities." (Defs.' Mot. to Dismiss at 9.)  This misconstrues the pleading requirements. Plaintiff need not allege that the Ford Defendants personally deposited the hazardous material onto Plaintiffs' property, but merely that they disposed of the hazardous material which eventually wound up causing Plaintiff harm.  Plaintiffs' allegations, which must be taken as true, state exactly this, claiming that the Ford Defendants engaged in an abnormally dangerous activity through their generation and disposal of the contaminated concrete, which infected Plaintiffs' property causing them harm. (See, e.g., Compl. ¶ 78, 89.)  This amounts to a sufficient allegation at the motion to dismiss stage.

E. Count XI: Trespass

Lastly, the Ford Defendants assert that Plaintiffs' claim for trespass fails as a matter of law.  Trespass is a cause of action for one's "unauthorized entry (usually of tangible matter) onto the property of another." N.J. Tpk. Auth. v. PPG Indus. Inc., 16 F. Supp. 2d 460, 478 (D.N.J. 1998).  Plaintiffs allege that the Ford Defendants committed a trespass upon Plaintiffs' property through the Ford Defendants' disposal of the PCB contaminated concrete onto Plaintiffs' property.  Essentially, Plaintiffs claim that, although they consented to the use of concrete for the

development of the Roadway, they did not consent to the use of the toxic substance provided by the Ford Defendants. The use of trespass liability for these scenarios has "been held to be an inappropriate theory of liability" and an "endeavor to torture old remedies to fit factual patterns not contemplated when those remedies were fashioned." Id. Even if New Jersey courts permitted recovery under trespass for contamination cases, Plaintiffs' allegations taken as true "would fail as a matter of law [as Plaintiffs' alleged] subsequent discovery of the 'true nature' of the fill substance . . . does not transform its acceptance of fill into a trespass." Id.

## IV.  Conclusion

For the reasons given above, and for good cause shown,

It is on this 8th day of January, 2007,

**ORDERED** that Ford Defendants' Motion to Dismiss [15] as to COUNTS V, VI and IX is **DENIED.**

**ORDERED** that Ford Defendants' Motion to Dismiss [15] as to COUNTS VII and VIII is **GRANTED** with respect to Ford Motor Company and **DENIED** with respect to Ford Motor Land Development Corporation, and

**ORDERED** that Ford Defendants' Motion to Dismiss [15] as to COUNTS X and XI is **GRANTED**.

s/Anne E. Thompson  
ANNE E. THOMPSON, U.S.D.J.